# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### FORT MYERS DIVISION

MICHELE C. CORNWALL-CARRION

        Plaintiff,

vs.                                CASE NO: 2:06-cv-346-JES-SPC

MICHAEL J. ASTRUE,[1]
Commissioner of Social Security,

_____

## REPORT AND RECOMMENDATION[2]

**TO THE UNITED STATES DISTRICT COURT**

This matter comes before the Court on the Plaintiff, Michele C. Cornwall-Carrion's Complaint Seeking Review of the Final Decision of the Commissioner of Social Security (Commissioner) denying the Plaintiff's Claim for Disability Insurance (Doc. #1) filed on July 13, 2006.  The Plaintiff filed her Memorandum of Law in Support of the Complaint (Doc. #10) on December 18, 2006.  The Commissioner filed a  Memorandum of Law in Support of the Commissioner's Decision (Doc. #13) on January 23, 2007.  Thus, the Motion is now ripe for review.

The Undersigned has reviewed the record, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the exhibits filed and administrative record, and the pleadings

---

[1] Michael J. Astrue became the Commissioner of Social Security on February 12, 2007.  Pursuant to Rule 25(d)(1), the Federal Rules of Civil Procedure, Michael J. Astrue should be substituted for Jo Anne B. Barnhart as the defendant in this suit.  No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] This Report and Recommendation addresses only the issues brought up for review by the District Court pursuant to 28 U.S.C. § 405(g).

and memoranda submitted by the parties in this case.

## FACTS

### *Procedural History*

On April 16, 2002, the Plaintiff filed an application for Disability Insurance Benefits alleging a disability commencing June 15, 2001.  (Tr. 19).  The application was denied initially and upon reconsideration.  (Tr. 19).  The Plaintiff timely filed a Request for Hearing by an Administrative Law Judge.  (Tr. 55).  A hearing was held before the Honorable Milton J. Carp, Administrative Law Judge (ALJ).  (Tr. 326-363).  The Plaintiff was represented by Jonas H. Kushner, Esq.  (Tr. 19).  Mr. Gary W. Maisel appeared and testified as a vocational expert witness.  (Tr. 19).  On February 18, 2005, the ALJ issued an unfavorable decision.  (Tr. 19-29). The Plaintiff filed a Request for Review of the Hearing Decision.  (Tr. 8).  The Appeals Council denied the Plaintiff's Request on May 19, 2006. (Tr. 5-7).   Having exhausted all administrative remedies, the Plaintiff timely filed a Complaint with this Court.

### *Plaintiff's History*

The Plaintiff was born on August 24, 1965, making her thirty-nine (39) years old at the time of the hearing.  (Tr. 19).  The Plaintiff has a high school education.  (Tr. 19).   The Plaintiff has a past relevant work history as a data entry clerk, customer service clerk, and mail sorter.  (Tr. 19).   The Plaintiff alleges an onset disability date of June 15, 2001, due to bilateral knee impairments causing constant pain and swelling, back and hip pain, poor vision and depression.  (Tr. 20).

### *Medical History*

The Plaintiff states her knee problems began as a result of a car accident on June 3, 1998.  (Tr. 20).  On January 14, 1999, the Plaintiff underwent arthroscopic chondroplasty of the medial femoral

2

condyle at the Long Island Surgicenter with Dr. Jimmy Lim.  (Tr. 129).  Upon examination under anesthetic, Dr. Lim completed a debridement of the fibrillated articular cartilage involving the weight bearing side of the medial femoral condyle and all debris was removed.  (Tr. 129).   The Plaintiff tolerated the procedure well.  (Tr. 130).

On February 28, 2000, the Plaintiff underwent an MRI examination with Dr. Howard Gelber. (Tr. 133).  Results showed that the Plaintiff had a tear in the posterior horn of the medial meniscus, medial collateral ligament strain, a small effusion, and spurring medial femoral condyle.  (Tr. 133).

On November 1, 2000, the Plaintiff presented to the Atlanta Center for Athletes upon referral by Dr. Kenneth Barnwell, the Plaintiff's primary care physician.  (Tr. 21, 202).  Upon examination, the Plaintiff's knee skin was intact with 2+ effusion.  (Tr. 202).  The portal was healed and full range of motion was noted.  (Tr. 202).  Tenderness in the knee was noted, however, there was no instability.  (Tr. 202).  The Plaintiff was diagnosed with right knee internal derangement, a meniscus tear and noted that the Plaintiff's work status was sedentary.  (Tr. 202).  The Plaintiff was to avoid long standing.  (Tr. 202).

On February 1, 2001, the Plaintiff presented to Dr. Vincent E. Boswell for pain above the right knee.  (Tr. 173-174).  Dr. Boswell was able to review the medical records of the Plaintiff's prior surgery.  (Tr. 173).  The existence of chondroplasty of the medial femoral condyle was noted from the Plaintiff's operative report.  Dr. Boswell noted that  no treatment of the medial meniscus was discussed, however,  myxoid degeneration was indicated. (Tr. 173). The Plaintiff underwent another MRI scan which revealed a medial meniscus tear.  (Tr. 173).  The Plaintiff was noted to be overweight.  Upon examination, the Plaintiff was assessed with a painful right knee.  (Tr. 174).  The Plaintiff sought to undergo arthroscopic surgery and debridement.  (Tr. 174). Dr. Boswell

3

recommended weight loss, physical therapy, anti-inflammatory medications and possible corticosteroid injections after surgery. (Tr. 174). On February 21, 2001, the Plaintiff underwent arthroscopic surgery with Dr. Boswell. (Tr. 135-137).

On December 6, 2001, the Plaintiff presented to Dr. J. Frank Avey. (Tr. 230-232). The Plaintiff reported that she wanted to quit smoking and wanted to get pregnant again. (Tr. 230). She complained of ear problems stating that she gets recurrent blockage and occasionally needs drops. (Tr. 230). Dr. Avey noted the Plaintiff weighed 303 pounds, up fifty (50) pounds in three years. (Tr. 230). There was some right knee crepitus, ligaments were ok, and she had fair range of motion with antalgic gait. (Tr. 230). Dr. Avey's impression consisted of obesity, irregular menses with infertility, eczema, and post traumatic osteoarthritis of the knee. (Tr. 230). Dr. Avey discussed smoking cessation and weight loss with the Plaintiff. (Tr. 229-230). The Plaintiff was prescribed Celebrex and Tylenol  for right knee pain and Wellbutrin for smoking cessation. (Tr. 228).

On June 24, 2002, the Plaintiff presented to Dr. S.V. Nagarathinam for a consultative examination for disability purposes. (Tr. 221-225). Upon examination, the Plaintiff weighed 299 pounds, was well developed and well nourished, well oriented in time and place and no acute distress. (Tr. 222). Dr. Nagarathinam noted that no deformity or signs of inflammation of any one of the major joints was present, however, range of motion was markedly restricted. (Tr. 223). It was noted the Plaintiff walked with a limp and used a cane. (Tr. 223). Power in the lower limbs could not be tested because of pain in both knees. (Tr. 223). Dr. Nagarathinam's impression was osteoarthritis of both knees, right worse than left, exogenous obesity, and depression. (Tr. 223).

On July 29, 2002, the Plaintiff presented to Dr. Harris L. Bonnette upon referral by the Office of Disability Determination for a neurological consultative examination. (Tr. 235-239). Dr. Bonnette

noted the Plaintiff's history and her complaints of pain in both ankles and knees. (Tr. 235). The Plaintiff's MRI scans were reviewed and unremarkable. (Tr. 235). The Plaintiff was noted to be independent with all self-care activities to include ADL's. (Tr. 236). Although she ambulated with a cane, there was no give-way weakness or falls, no low back pain or radicular symptoms. (Tr. 236). Examination revealed full flexion/extension of both knees, dorsiflexion and plantar extension, inversion and eversion were all full, and she had good distal pulses. (Tr. 236). The right patella is in the midline with some crepitus consistent with chondromalacia. (Tr. 236). The reflexes are trace in the upper extremity. (Tr. 237). When both knees and ankles were percussed, the patient cried out in pain, which Dr. Bonnette considered an embellishment response. (Tr. 237). Dr. Bonnette opined the Plaintiff's neurological examination was entirely unremarkable and non-focal except for functional give-way weakness and inappropriate response to reflex testing. (Tr. 238). It was further opined the Plaintiff was not disabled from a neurological viewpoint, the Plaintiff had changing symptoms with vegetative symptoms all suggesting non-neurologic/orthopedic process. (Tr. 238).

On July 9, 2002, Dr. Avey completed a form in response to questions from the Division of Disability Determinations. (Tr. 226). Dr. Avey noted the Plaintiff suffered from a mental impairment that significantly interfered with daily functioning, she had not been referred for formal mental health treatment; and she was prescribed Wellbutrin for her condition. (Tr. 226). The Plaintiff was subsequently referred for a psychological consultative examination. (Tr. 21, 226).

On August 17, 2002, the Plaintiff underwent a mental health evaluation with Dr. Chris J. Carr. (Tr. 248-254). The Plaintiff's chief complaint was chronic knee pain and loss of functioning with resultant depression, however, it was noted the depression did not interfere with work, the knee injury did. (Tr. 249). The Plaintiff reported taking Wellbutrin for smoking cessation. (Tr. 250). The

5

Plaintiff reported that she "can't do almost anything", has not made friends in Florida yet and is unable to engage in tasks.  (Tr. 250).  The Plaintiff states she becomes totally inactive at times, laying on the couch and watching TV all day.  (Tr. 250).  Upon mental examination, Dr. Carr opined the Plaintiff showed a depressed mood, sad affect, but normal memory and concentration.  (Tr. 253).  Dr. Carr diagnosed the Plaintiff with major depression and assessed a GAF score of 52 which indicated moderate symptom or moderate difficulty in social and occupational functioning.  (Tr,. 253).

Dr. Caroline Moore completed a Physical Residual Functional Capacity Assessment on December 16, 2002.  (Tr. 283-290).  Dr. Moore opined the Plaintiff could occasionally lift twenty (20) pounds, frequently lift ten (10) pounds, stand about 6 hours in an 8 hour workday, sit for 6 hours in an 8 hour workday, and unlimited push or pull capability.  (Tr. 284). Dr. Moore stated  the Plaintiff had occasional postural limitations.  (Tr. 285).  Dr. Moore further stated the Plaintiff's obesity exacerbates her right knee problems, the Plaintiff was known to exaggerate and embellish her pain, and the credibility of the Plaintiff was questionable.  (Tr. 288).

In March and April 2003, the Plaintiff was under the care of Dr. Bernd Raphael.  (Tr. 299).  The Plaintiff complained of chronic knee pain.  (Tr. 299-302).  Weight loss and diet were discussed.  (Tr. 299).  Examination revealed effusion in the knees and complaints of pain with range of motion.  (Tr. 22, 299).  Dr. Raphael's diagnosis consisted of osteoarthritis of the knees and morbid obesity.  (Tr. 22, 300). Dr. Raphael referred the Plaintiff for orthopedic evaluation and noted the Plaintiff did not qualify for a disabled parking permit.  (Tr. 22, 299).  No orthopedic evaluation is documented.  (Tr. 22).

In April and May, 2003, the Plaintiff participated in physical therapy treatment at the Physical

Therapy Associates upon referral from Dr. Medina. (Tr. 308-323). The Plaintiff reported pain in her right knee. (Tr. 309). The Plaintiff was to be seen for 2-3 times per week for 4-6 weeks. (Tr. 311). On May 2003, the Plaintiff reported doing a lot of walking in the mall and her knees did not hurt, she had no difficulty with therapy exercises, and no complaints of pain, only soreness. (Tr. 323). The record does not contain documentation of any treatment by Dr. Medina. (Tr. 22).

On July 18, 2003, the Plaintiff returned to Dr. Avey with complaints of bilateral knee problems. (Tr. 22, 295). Dr. Avey recommended orthopedic referral. (Tr. 295). Subsequently, in January 2004, the Plaintiff returned with complaints of pain and swelling. (Tr. 295). Examination revealed effusion, joint tenderness, and crepitus, but good range of motion. (Tr. 294). Dr. Avey discussed the importance of losing weight and eating healthier. (Tr. 293-294). The Plaintiff stated she was going to exercise on a treadmill for 45 minutes and was encouraged to do so. (Tr. 293).

On February 3, 2004, the Plaintiff presented to Dr. Peter J. Curcione. (Tr. 303-305). The Plaintiff complained of bilateral "equal" knee pain. (Tr. 303). The Plaintiff states it bothers her at all times. (Tr. 303). Upon examination, Dr. Curcione's impression was the Plaintiff suffered from advance arthrosis of the medial compartment of bilateral knees. (Tr. 303). Dr. Curcione discussed treatment options with the Plaintiff, which included surgery. (Tr. 22, 303). MRI scans were repeated to evaluate medial meniscus tears. (Tr. 303). Long leg x-rays were also scheduled to check for axial alignment. (Tr. 303). Test results revealed medial meniscus tear and degenerative changes of the medial joint compartment (Tr. 22, 305-306).

On May 11, 2004, Dr. Avey completed Pain Interrogatories indicating the Plaintiff was under his care for obesity, osteoarthritis of the knees, depression, hypertension, and type 2 diabetes. (Tr. 298). The Plaintiff's knee examination revealed  bilateral knee effusion, joint line tenderness and

7

crepitus.  Dr. Avey stated osteoarthritis of the knees could reasonable be expected to produce pain and surgery was being considered to alleviate the knee pain.  (Tr. 298).

On Dr. Carol Deatrick, a State Agency physician,  completed a psychiatric review technique form.  (Tr. 269-282).  Dr. Deatrick opined the Plaintiff suffered from major depression but did not suffer from any functional limitations.  (Tr. 272, 279).

### Administrative Law Judge's Decision

Upon consideration of the record, the ALJ found the Plaintiff meets the non-disability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through the date of the decision. (Tr. 27).  The ALJ found the Plaintiff did not engage in substantial gainful activity after the alleged onset date.  (Tr. 27).  The ALJ found the Plaintiff has an impairment or combination of impairments considered "severe" based on the requirements in the Regulations 20 C.F.R. § 404.1520(b).  (Tr. 27).  However, the ALJ determined the these medically determinable impairments did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.  (Tr. 27).  The ALJ found the Plaintiff's allegations regarding her limitations were not totally credible.  (Tr. 27).  The ALJ, having carefully considered the medical opinions, found the Plaintiff retained the following residual functional capacity: can lift ten (10) pounds occasionally and five (5) pounds frequently; she can walk/stand for two (2) hours in an 8-hour workday and sit for six (6) hours in an 8-hour workday; and she can perform activities that do not involve fine visual requirements. (Tr. 28).  The ALJ also found the Plaintiff remains able to perform simple, repetitive, unskilled work activity.  (Tr. 28).  The ALJ concluded the Plaintiff's depression caused no more than mild restriction of daily activities, mild difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration,

8

persistence, or pace. (Tr. 28). The ALJ concluded the Plaintiff was unable to perform any of her past relevant work. (Tr. 28). The ALJ determined the Plaintiff is considered a "younger individual" with a high school education and no transferrable skills from the semi skilled work previously performed. (Tr. 28). Therefore, the Plaintiff is limited to the unskilled work as described in the body of the decision. (Tr. 28). The ALJ concluded the Plaintiff retained the residual functional capacity to perform a significant range of sedentary work. (Tr. 28). The ALJ further concluded although the Plaintiffs exertional limitations do not allow her to perform the full range of sedentary work, using Medical-Vocational Rule 201.28 as a framework for decision-making, there are a significant number of jobs in the national economy the Plaintiff is capable of performing. (Tr. 28). Such examples, as listed by the ALJ, include a hand mounter and surveillance system monitor. (Tr. 28). Accordingly, the Plaintiff was not under a disability as defined in the Social Security Act, at any time through the date of the decision. (Tr. 28).

## THE STANDARD OF REVIEW

### A. Affirmance

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, Richardson v. Perales, 402 U.S. 389, 390, 91 S. Ct. 1420, 28 L. Ed 2d 842 (1971). In evaluating whether a claimant is disabled, the ALJ must follow the sequential inquiry described in the regulations[3]. See 20 C.F.R. §§ 404.1520(a), 404.920(a). The

---

[3]The inquiry requires the ALJ to engage in a five-step analysis, which will either preclude or mandate a finding of disability. The steps are as follows: *Step 1.* Is the claimant engaged in substantial gainful activity? If the claimant is engaged in such activity, then he or she is not disabled. If not, then the ALJ must move on to the next question.
*Step 2.* Does the claimant suffer from a severe impairment? If not, then

9

Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla-*i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982)); Richardson, 402 U.S. at 401.

Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.  Edwards v. Sullivan, 937 F.2d 580, 585 n.3 (11th Cir. 1991); Barnes v. Sullivan, 932 F.3d 1356, 1458 (11th Cir. 1991).  The District Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  Foote, 67 F.3d at 1560; Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir 1992) (holding the court must scrutinize the entire record to determine reasonableness of factual findings).

The court  "may not decide the facts anew, reweigh the evidence or substitute it's judgment for that of the [Commissioner]."Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).  If

---

the claimant is not disabled.  If there is a severe impairment, the ALJ moves on to step three.

    *Step 3*.  Does the claimant's impairment meet or equal one of the listed impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1.  If so, then the claimant is disabled.  If not, the next question must be resolved.

    *Step 4*.  Can the claimant perform his or her former work?  If the claimant can perform his or her past relevant work, he or she is not disabled.  If not, the ALJ must answer the last question.

    *Step 5*.  Can he or she engage in other work of the sort found in the national economy?  If so, then the claimant is not disabled.  If the claimant cannot engage in other work, then he or she is disabled.  See 20 C.F.R. §§404.1520(a)-(f), 416.920(a)-(f); see also Phillips v. Barnhart, 357 F.3d 1232, 1237-40 (11th Cir. 2004); Foote v. Chater, 67 F.3d 1553, 1557 (11th Cir. 1995) (per curiam).

the Commissioner's decision is supported by substantial evidence, it should not be disturbed. <u>Lewis</u> <u>v. Callahan</u>, 125 F. 3d 1436, 1440 (11th Cir. 1997).

### B.  **Reversal and Remand**

Congress has empowered the district court to reverse the decision of the Commissioner without remanding the cause. 42 U.S.C. § 405 (g)(Sentence Four). The district court will reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. <u>Keeton v. Department of Health and Human Services</u>, 21 F.3d 1064, 1066 (11th Cir. 1994); <u>Cornelius v. Sullivan</u>, 936 F.2d 1143, 1145 (11th Cir. 1991); <u>Martin v. Sullivan</u>, 894 F.2d 1520, 1529 (11th Cir. 1990). This Court may reverse the decision of the Commissioner, and order an award of disability benefits, where the Commissioner has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt. <u>Davis</u> <u>v. Shalala</u>, 985 F.2d 528, 534 (11th Cir. 1993).  The district court may also remand a case to the Commissioner for a rehearing under sentence four of 42 U.S.C. § 405 (g); under sentence six of 42 U.S.C. § 405 (g); or under both sentences. <u>Jackson v. Chater</u>, 99 F.3d 1086, 1089 - 92, 1095, 1098 (11th Cir. 1996).

To remand under sentence four, the district court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim. <u>Jackson</u>, 99 F.3d at 1090 - 91 (remand appropriate where ALJ failed to develop a full and fair record of claimant's residual functional capacity); <u>Davis</u>, 985 F.2d at 534 (remand to the Secretary is warranted where the ALJ has failed to apply the correct legal standards).  Where the district court cannot discern the basis for the Commissioner's decision, a

sentence-four remand may be appropriate to allow the Commissioner to explain the basis for his decision. Falcon v. Heckler, 732 F.2d 827, 830 (11th Cir. 1984). (remand was appropriate to allow ALJ to explain the his basis of his decision).

On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence upon a showing that there is new evidence which is material and that there was good cause for the failure to incorporate such evidence into the record during a prior proceeding. Diorio v. Heckler, 721 F.2d 726, 729 (11th Cir. 1983)(finding ALJ error and remanding to consider psychiatric evaluation); Reeves v. Heckler, 734 F.2d 519, 522 n.1 (11th Cir. 1984) (remanding on the grounds that it is reversible error for the ALJ not to order a consultative examination when warranted). After a sentence-four remand, the district court enters a final and appealable judgment immediately, and then loses jurisdiction. Jackson, 99 F.3d at1095.

In contrast, a sentence-six remand may be warranted even in the absence of an error by the Commissioner if new, material evidence becomes available to the claimant. Jackson, 99 F.3d at 1095. Sentence six of § 405 (g) provides:

> The court . . . may at any time order additional evidence to  be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding.

42 U.S.C. § 405 (g) (sentence six). To remand under sentence six, the claimant must establish: 1.) that there is new, non-cumulative evidence; 2.) that the evidence is material — relevant and probative so that there is a reasonable possibility that it would change the administrative result; and 3.) there is good cause for failure to submit the evidence at the administrative level.  Jackson, 99 F.3d at 1090 - 92; Keeton v. Dept. of Health and Human Serv., 21 F.3d 1064, 1068 (11th Cir. 1994).  With a

sentence-six remand, the parties must return to the district court after remand to file modified findings of fact. Jackson, 99 F.3d at 1095. The district court retains jurisdiction pending remand, and does not enter a final judgment until after the completion of remand proceedings.[4] Id.

## THE LAW

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416 (I), 423 (d)(1); 20 C.F.R. § 404.1505. The impairment must be severe, making the claimant unable to do his or her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423 (d)(2); 20 C.F.R. §§404.1505 - 404.1511.

## DISCUSSION

The Plaintiff argues the ALJ erred when he failed to conclude the Plaintiff had a condition or combination of conditions which met or equaled the criteria of the Listings. Specifically, the Plaintiff contends the ALJ failed to find the Plaintiff met or equaled Listing 1.02, major dysfunction of a joint, and Listing 1.03, reconstructive surgery or surgical arthrodesis of a major weight-bearing joint. The Plaintiff responds the ALJ supported his decision with substantial evidence from the record and applied the correct legal standard.

When a Plaintiff claims to have a condition that meets or equals a Listing, the Plaintiff bears

---

[4]The time for filing an application for attorneys fees under the Equal Access to Justice Act, 28 U.S.C. § 2412 ["EAJA"] differs in remands under sentence four and sentence six. Jackson, 99 F.3d at 1089, 1095 n.4 and surrounding text. In a sentence-four remand, the EAJA application must be filed after the entry of judgment before the district court loses jurisdiction. Id. In a sentence-six remand, the time runs from the post-remand entry-of-judgment date in the district court. Id.

the burden of proof that she suffers from a severe impairment or combination of impairments. <u>Gibbs v. Barnhart</u>, 156 Fed. Appx. 243, 246 (11th Cir. 2005).   The Regulations are clear that a determination on the issue of medical equivalence to a listed impairment must be based upon medical findings. 20 C.F.R. § 404.1526(a).   To meet a Listing, a plaintiff must have a diagnosis included in the Listings and must provide medical reports documenting the conditions meet the specific criteria of the Listing. <u>Johnson v. Barhhart,</u>148 Fed. Appx. 838, 840 (11th Cir. 2005).   To equal a Listing, the medical findings must be "at least equal in severity and duration to the listed findings." <u>Wilson v. Barnhart</u>, 284 F.3d 1219, 1224 (11th Cir. 2002) (citing 20 C.F.R. § 404.1526(a)).   The ultimate conclusion of whether the Plaintiff meets or equals a Listing is reserved to the Commissioner. 20 C.F.R. § 404.1527(e)(2).

<u>*(1) Whether the Plaintiff Met Listing 1.02(A)*</u>

The Plaintiff argues the ALJ erred by failing to find the Plaintiff's impairment or combination of impairments met or equaled in severity the Listing 1.02 because he: (a) made factual errors in reviewing the medical record; (b) failed to find the Plaintiff had a major dysfunction of her knee joints; (c) discounted the Plaintiff's pain allegations; (d) improperly considered the opinions of her treating physicians doctors Avery and Barnwell; and (e) failed to consider the Plaintiff's obesity.

Listing 1.02 reads in pertinent part:

> [m]ajor dysfunction of a joint(s) (due to any cause): Characterized by gross anatomical deformity (e.g. subluxztion, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s) With:
>
> (A) Involvement of one major peripheral weight-bearing joint (i.e. hip,

14

knee, or ankle), resulting in ability to ambulate effectively, as defined
by 1.00B2b.

### (a) Whether the ALJ Made Factual Errors in Reviewing the Medical Record

The Plaintiff begins her argument asserting the ALJ committed factual errors in assessing the

opinions of Dr. Craven, Dr. Barnwell, and Dr. Bonnette.  In his decision the ALJ noted "[a]lthough

the claimant was diagnosed with osteoarthritis, meniscus tear, and obesity and underwent

arthroscopic surgery on the right knee, the record does not document gross anatomical deformity of

either knee. (Tr. 23).  The ALJ continued "[e]xamination by orthopedic specialist Dr. Carven in

November 2000 revealed no instability; examination by the surgeon Dr. Boswell in April 2001

revealed no give-way weakness; and examination by neurology specialist Dr. Bonnette in July 2002

was unremarkable from both a neurological and orthopedic standpoint with no apparent weakness

and the claimant was able to ambulate without a cane." (Tr. 23).  Dr. Bonnette also opined the

Plaintiff gave less than a full effort and she embellished her reactions to his reflex test. (Tr. 284).

Regarding Dr. Boswell's findings, the Plaintiff argues the ALJ did not address Dr. Boswell's

opinion relating to her RFC.  While it is true the ALJ did not address Dr. Bowsell's surgical notes

from February 2001, he did address the Plaintiff's follow-up visit report dated April 2001, in which

Dr. Boswell opined the Plaintiff revealed no give-way weakness in her knee.

In addressing Dr. Craven's opinion, the ALJ noted Dr. Craven found "no instability" in the

Plaintiff's knee. (Tr. 23).  Indeed, Dr. Craven's medical report implicitly states the Plaintiff's knee

had no instability. (Tr. 202).  Dr. Craven further opined the Plaintiff was in general good health, and

regarding her work status, she could work sedentary jobs but should avoid long periods of standing.

(Tr. 202).  Dr. Cravens opinion is in harmony with the ALJ's decision as he determined the Plaintiff

had an RFC for sedentary work. (Tr. 25).

Finally, the Plaintiff argues the ALJ could not consider Dr. Bonnette's opinion the Plaintiff embellished her reactions to the physical examination because the ALJ was not present at the exam. The Plaintiff's argument is frivolous.  The Regulations require the ALJ to consider the medical evidence in the record and not to attend a claimant's examinations before considering her claim. 20 C.F.R. § 404.1526(a) (stating the ALJ's determination on the issue of medical equivalence to a listed impairment must be based upon medical findings).

The Plaintiff also asserts the ALJ erred because he did not consider the opinion of Dr. Nagarathinam in this particular section.  Again the Plaintiff's argument is frivolous.  Merely because the ALJ considered Dr. Nagarathiman's opinion later in his decision does not invalidate the ALJ's opinion.   Nevertheless, the ALJ did considered Dr. Nagarathiman's opinion noting he found restriction of motion in the claimants knee but that he failed to check the claimant's lower extremity strength because of the claimant's discomfort. (Tr. 25).  The ALJ also noted the Plaintiff was not fully cooperative during Dr. Nagarathiman's examination.  The ALJ then contrasted Dr. Nagarathiman's incomplete examination results with those of knee specialist Dr. Curcione who found no deformity or signs of inflamation in the Plaintiff's knee. (Tr. 25).  Thus the ALJ properly discounted Dr. Nagarathiman's opinion because an ALJ must give controlling weight to a treating physician if a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record. 20 C.F.R. § 404.1527 (d)(2).   Here the ALJ discounted Dr. Nagarathiman's opinion by noting his examination of the Plaintiff was incomplete and further that Dr. Nagarathiman's opinion conflicted with other objective medical evidence, which supported a contrary

16

finding. <u>Edwards v. Sullivan</u>, 937 F.2d 580, (11th Cir. 1991); <u>Morrison v. Barnhart</u>, 278 F. Supp.

1331, 1334 (M.D. Fla. 2003). The ALJ also noted that no treating or examining physician reported

findings equivalent in severity to any listed impairment. (Tr. 23).   After review of the above

referenced physicians' reports, the Plaintiff's argument lacks merit.   The ALJ clearly considered the

medical opinions of each physician as their opinions related to the Listings and made a proper

determination regarding whether or not the Plaintiff's impairments met section 1.02 of the Listings.


### (b) Whether the Plaintiff had a Gross Dysfunction of a Joint

The Plaintiff argues she met the gross dysfunction of a joint requirement under 1.02 because

she was diagnosed with a torn meniscus in both knees, joint space narrowing, stage II and III

chondromalacia, degenerative changes, arthritis and spurring in one or both knees.   In this instance,

the medical evidence does not support the Plaintiff's disability Listing claims.   The ALJ held in

pertinent part:

> [a]lthough the claimant's representative argues that the claimant's
> osteoarthris of the knees was of listing level severity and the
> requirements of section 1.02 of the Listings, the findings in evidence
> do not support this contention. Although the claimant was diagnosed
> with osteoarthritis, meniscus tear, and obesity and underwent
> arthroscopic surgery on the right knee, the record does not document
> gross anatomical deformity of either knee. Examination by orthopedic
> specialist Dr. Craven in November 2000 revealed no instability
> (Exhibit 5F); examination by the surgeon Dr. Boswell in April 2001
> revealed no give-way weakness (Exhibit 4F); examination by
> neurology specialist Dr. Bonnette in July 2002 was unremarkable from
> both a neurological and orthopedic standpoint with no apparent
> weakness and Dr. Bonnette reported that the claimant was able to
> ambulate without a cane (Exhibit 17F).   The record does not
> document even considering the claimant's obesity, that the claimant
> was unable to ambulate effectively, that she had an extreme limitation
> of the ability to walk, an impairment that very seriously interfered with

her ability to initiate, sustain, and complete activities, or that she was
unable to ambulate independently without use of an assistive device.

(Tr. 23).  The ALJ continued by evaluating a long list of daily activities the Plaintiff was able to

perform including being able to walk one block, walk in the mall without knee pain, and complete her

therapy exercises without difficulty. (Tr. 23-24).  The Plaintiff further indicated to Dr. Curcione, in

February 2004, that her knee pain was just beginning to interfere with her activities. (Tr. 24).

        As noted above, the Plaintiff bears the burden of establishing her impairment or combination

of impairments equals a Listing. 20 C.F.R. § 404.1512; Moore v. Barnhart, 405 F.3d 1208, 1211

(11th Cir. 2005).  Merely because an individual had been diagnosed with an impairment does not

mean the impairment meets the listing because"[d]isability is determined by the effect an impairment

has on the claimant's ability to work, rather than the diagnosis of an impairment itself." Davis v

Barnhart, 153 Fed. Appx. 569, 572 (11th Cir. 2005).  The term disability means inability to engage

in substantial gainful activity by reason of any medically determinable physical or mental impairment.

Id.  Here, the ALJ clearly assessed all of the Plaintiff's physical impairments and capabilities from the

medical record and noted the Plaintiff was capable of performing substantial daily activities.  As a

result, the Court respectfully recommends the ALJ correctly determined the Plaintiff's impairments

did not meet or equal section 1.02 of the Listings.

        *(c) Whether the ALJ Considered the Opinions of the Plaintiff's Treating Physicians*
                                *Avey and Barnwell*

        The Plaintiff argues the ALJ erred in his consideration of the Plaintiff's treating phyiscians Dr.

J. Frank Avey, M.D. and Dr. Kenneth Barnwell, M.D.  The Plaintiff states she was treated by both

18

Drs. Avey and Barnwell who treated her for knee pain and performed physical examinations that supported her alleged pain.

Substantial weight must be given to the opinion, diagnosis, and medical evidence of a treating physician unless there is good cause to do otherwise. 20 C.F.R. § 404.1527 (d); Lewis, 125 F.3d at 1439 - 1441; Sabo v. Commissioner of Social Security, 955 F.Supp. 1456, 1462 (M.D. Fla. 1996). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527 (d)(2). The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence, supports a contrary finding, or is wholly conclusory. Edwards v. Sullivan, 937 F.2d 580,  (11th Cir. 1991) (ALJ properly discounted treating Physician's report where the physician was unsure of the accuracy of his findings and statements); Morrison v. Barnhart, 278 F. Supp. 1331, 1334 (M.D. Fla. 2003).  Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. Schnor v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987); Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986).  When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on the (1) length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical issues at issue; (6) other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527 (d).  However, a treating physician's opinion is generally entitled to more weight than a

19

consulting physician's opinion. 20 C.F.R. § 404.1527 (d)(2); <u>Wilson v. Heckler</u>, 734 F.2d 513, 518 (11th Cir.1984). Furthermore, should the ALJ discount the treating physician's opinion he must clearly articulate the reasons for giving less weight to the opinion, and failure to do so is reversible error. <u>Morrison</u>, 278 F. Supp. at1334.

The ALJ is required to review all of the medical findings and other evidence that supports a medical source's statement that a claimant is disabled. However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability. 20 C.F.R. § 404.1527 (e). The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether the claimant meets a listed impairment, a claimant's residual functional capacity (20 C.F.R. §§ 404.1545 and 404.1546), or the application of vocational factors because that ultimate determination is the providence of the Commissioner. 20 C.F.R. § 404.1527 (e).

Although the Plaintiff argues the ALJ failed to credit the opinions of Drs. Avey and Barnwell, the ALJ addressed both opinions in his decision. Regarding Dr. Barnwell, the ALJ noted that Dr. Barnwell opined in March and April of 2001 the Plaintiff's rehab was going well and continuing. (Tr. 21). The Plaintiff came under the care of Dr. Avey in December of 2001. (Tr. 21). The ALJ noted while Dr. Avery reported the claimant's osteoarthritis could be expected to produce pain symptoms and his examinations showed some effusions, tenderness, and crepitus, Dr. Avey did not restrict the Plaintiff's activities. (Tr. 25). In fact, Dr. Avey encouraged the Plaintiff to increase her exercise on a treadmill to 45 minutes. (Tr. 25). The opinions of Drs. Avey and Barnwell supported the ALJ's decision finding the Plaintiff could perform a wide range of sedentary work. The ALJ also considered the opinions of the Plaintiff's other treating physicians and the State Agency Consultants all of whom

supported the opinions of Dr. Avey, and Dr. Barnwell, opining the Plaintiff was not disabled. (Tr.22-25).   Thus, contrary to the Plaintiff's allegations, the ALJ credited the opinions of her treating physicians.

### (d) Whether the ALJ Properly Considered the Plaintiff's Pain

Although the Plaintiff does not specifically allege the ALJ failed to discredit her pain allegations, he does allude to her pain complaints in addressing the opinions of Dr. Avey and Barnwell.   Therefore, the Court will review the ALJ's pain credibility analysis.

The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528. In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the Eleventh Circuit's three-part "pain standard." Foote, 67 F.3d at 1560.

The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain. Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991). Pain alone can be disabling, even when its existence is unsupported by objective evidence, Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992), although an individual's statement as to pain is not, by itself, conclusive of disability. 42 U.S.C. § 423 (d)(5)(A).

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding.

21

Foote, 67 F.3d at 1561-62; Jones v. Department of Health and Human Services, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. Hale v. Bowman, 831 F.2d 1007, 1012 (11th Cir. 1987); MacGregor v. Bowen, 786 F.2d 1050, 1054 (11th Cir. 1986). As a matter of law, the failure to articulate the reasons for discrediting subjective pain testimony requires the testimony be accepted as true. Foote, 67 F.3d at 1561-62; Cannon v. Bowen, 858 F.2d 1541, 1545 (11th Cir. 1988).

A lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case. Smallwood v. Schweiker, 681 F.2d 1349, 1352 (11th Cir. 1982). If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding." Foote v. Chater, 67 F.3d at 1562 (quoting Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir.1983) (although no explicit finding as to credibility is required, the implication must be obvious to the reviewing court).

In this instance, the ALJ found the Plaintiff's pain complaints were not entirely credible. (Tr. 24). The ALJ reviewed the Plaintiff's medical records noting the Plaintiff told her physical therapist that she walked a lot in the mall and that her knees did not hurt. (Tr. 25). In fact, the Plaintiff told Dr. Curcione in February 2004 that her knee pain was just beginning to interfere with her activities in contrast to her claims presented to the administration that her pain had limited her since 2001. (Tr. 25). The ALJ also considered the Plaintiff's daily activities noting "the claimant stated she was able to walk one block; she drove 30 miles per week to various activities; she was able to go shopping, cook, clean house, and do laundry with some help, visit with others, and take her son to his after

22

school activities four times per week." (Tr. 25).  While the performance of everyday tasks cannot be used to make a determination the Plaintiff was not disabled, daily activities can be used as a measure of the Plaintiff's credibility in regard to his ability to perform certain tasks.  *See* Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005) (noting that the ALJ properly discredited a treating physicians testimony by pointing out the contrasts in the claimants daily activities and the physicians diagnosis); Wilson v. Barnhart, 284 F.3d 1219, 1226 (11th Cir. 2002) (upholding the ALJ's finding that the claimant's allegations of disabling pain were not credible because of her daily activities demonstrated otherwise).  *See* Norris v. Heckler, 760 1154, 1158 (11th Cir. 1985) (holding that an ALJ may consider the plaintiff's demeanor when making a credibility determination); SSR 96-7p (the inconsistency of the Plaintiff's own statements with information contained in the record bears upon her credibility).  After reviewing the medical record, the Plaintiff's own conflicting statements, and her varied and busy daily activities, the ALJ concluded the Plaintiff's subjective complaints of pain were not fully credible.  It is clear from the ALJ's decision that he clearly articulated his credibility finding with substantial supporting evidence in the record.  Therefore, it is respectfully recommended the ALJ's decision should not be remanded on those grounds.


*(e) Whether the ALJ Considered the Plaintiff's Ability to Ambulate Pursuant to Listing 1.00B2b*

The Plaintiff argues she cannot walk a block or ambulate without assistance as defined in the regulations under 1.00B2b.  Under 1.00B2b ineffective ambulation as an extreme limitation of the ability to walk is characterized by an inability to independently ambulate without the use of a hand-held assistive device that limits functioning of both upper extremities. 20 C.F.R. pt. 404, subpt. P, app. 1, § 100B2b(1) and (2).  Examples of ineffective ambulation include but are not limited to, the

inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block

at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation,

the inability to carry out routine ambulatory activities. 20 C.F.R. pt. 404, subpt. P, app. 1, §

1.00B2b(2).

It is clear from the record, the Plaintiff did not meet the requirements of ineffective ambulation

as defined in § 1.00B2b(2) of the Regulations. The ALJ noted the Plaintiff was able to walk one

block; she drove 30 miles per week to various activities; she was able to go shopping, cook, clean

house, and do laundry with some help, visit with others, and take her son to his after school activities

four times per week." (Tr. 25).  The Plaintiff also walked in the local mall. (Tr. 25). The ALJ further

noted that Dr. Bonette opined the Plaintiff could walk without a cane. (Tr. 24).  Consequently, the

ALJ found the Plaintiff's impairments, though severe, were not severe enough to meet or equal the

Listing under § 1.00B2b(2) or § 1.02A.


### (f) Whether the ALJ Considered the Plaintiff's Obesity

The Plaintiff argues the ALJ failed to consider her obesity in combination with her other

impairments when making his decision.  At the second step in the evaluation process, the ALJ is to

"consider the medical severity of the [Plaintiff's] impairments. 20 C.F.R. § 404.1520(a)(4)(ii).  When

considering the severity of the claimant's medical impairments, the ALJ must determine whether the

impairments, alone or in combination, "significantly limit" the claimant's "physical or mental ability

to do basic work skills." Phillips v Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004) (citing C.F.R. §

404.1520(c)).  At the second step, the Plaintiff bears the burden of proof that he suffers from a severe

impairment or combination of impairments. Gibbs v. Barnhart, 156 Fed. Appx. 243, 246 (11th Cir.

2005).  An impairment or combination of impairments is not severe if it "does not significantly limit [the plaintiff's] physical or mental ability to do basic work activities," including: (1) "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling"; (2) "[c]apacities for seeing, hearing, and speaking;" (3) "[u]nderstanding, carrying out, and remembering simple instructions;" (4) "[u]se of judgment;" (5) "[r]esponding appropriately to supervision, co-workers and usual work situations;" and (6) "[d]ealing with changes in a routine work setting." Id. (citing 20 C.F.R. § 404.1521(a),(b)).  Where a claimant has alleged several impairments, the Commissioner has a duty to consider the impairments in combination and to determine whether the combined impairments render the claimant disabled. Jones v Department of Health and Human Services, 941 F.2d 1529, 1533 (11th Cir. 1991).

    The ALJ made a thorough review of the Plaintiff's medical evidence and found "[t]he evidence thus indicates that the claimant has osteoarthritis of the knees, status post arthroscopic surgery of the right knee, obesity, hypertension, diabetes, and depression, a combination of impairments that is severe within the meanings of the Regulations but not severe enough, individually or in combination, to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4." (Tr. 23).  The ALJ specifically reviewed the medical evidence and specifically considered the Plaintiff's obesity in combination with her other impairments and found that her obesity individually or in combination did not meet or qual in severity a listed impairment.  An ALJ properly considers the Plaintiff's impairments in combination if he states that the Plaintiff does not have an impairment, or combination of impairments of sufficient severity to prevent him for engaging in any substantial gainful activity. Gibbs, 156 Fed. Appx. at 246 (citing Wheeler v Heckler, 784 F.2d 1073, 1076 (11th Cir. 1986)).  Since, the ALJ specifically considered the Plaintiff's obesity

independently and in combination with her other impairments, the Court finds the Plaintiff's argument unpersuasive.

*(2) Whether the ALJ Erred by Finding the Plaintiff Did not Meet or Equaled Listing 1.03*

The Plaintiff argues the ALJ erred by not determining the Plaintiff met or equaled Listing 1.03. The Plaintiff also argues the ALJ failed to fully develop the record because he did not consider the "knee sheet" referred to in Dr. Curcione's report.

The Listing reads in pertinent part:

> [r]econstructive surgery or surgical arthodesis of a major weight-bearing joint with inability to ambulate effectively, as defined in 1.00B2b, and returned to effective ambulation did not occur, or is not expected to occur, within 12 months of onset.

20 C.F.R. pt. 404, subpt. P, app. 1, § 1.03. An individual must have ineffective ambulation as defined under 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.00B2b before they meet or equal § 1.03. As noted above, the Court found the ALJ correctly determined the Plaintiff did not meet the requirements of ineffective ambulation under § 1.00B2b because she is capable of walking around the mall, walking a block and performing a wide range of daily activities without the requirement of an ambulatory assistive device such as walker or pair of crutches or canes. (Tr. 25). Therefore, the ALJ did not err by not finding the Plaintiff met or equaled the Listing.

The Plaintiff also alleges the ALJ erred by not fully developing the record. The ALJ has a duty to fully and fairly develop the record. Welch v. Bowen, 854 F.2d 436, 438 (11th Cir. 1988); Cowart v. Schweiker, 662 F.2d 731, 735 - 36 (11th Cir. 1981). However, while it is well established the ALJ has a duty to develop a full and fair record, that duty only extends to the record for the twelve (12)

months preceding the filing of an application for benefits. Ellison v. Barnhart, 355 F.3d 1272, 1276 (11th Cir. 2003).  The ALJ's duty to develop the record does not relieve the Plaintiff of her burden of proving that she is disabled, and consequently, the Plaintiff is still responsible for producing evidence in support of her claim. Id. (citing 20 C.F.R. § 416.912(c)).

The Plaintiff states the ALJ erred because he knew that sections of Dr. Curcione's report were not included in the record and therefore, the ALJ failed to fully develop the record.  The Plaintiff bases her argument on a portion of the hearing held in regards to the Plaintiff's claim for benefits and a sentence from Dr Curcione's office notes.  During the hearing, the following communications took place:

ALJ: "did you ever attempt to get a RFC from either Dr. Avey or Dr. Curcioni [sic]" (Tr. 350).

ATTY: "I believe we tried to get one from Dr. Avery [sic], but we don't have one." (Tr. 350).

ALJ: "Don't have one?" (Tr. 350).

ATTY: "We, we, we did send out a request, but I, I did not get one." (Tr. 350).

ALJ: "And, and, and Dr. Avery [sic]?" (Tr. 350).

ATTY: "And, I'm sorry, we did the same thing with Dr. Curcioni [sic], and" (Tr. 350).

ALJ: "There was, there was one sent to Dr. Curcioni [sic]?" (Tr. 350).

ATTY: "Yes, sir." (Tr. 351).

ALJ: "How many times did you see Dr. Curcioni [sic]?" (Tr. 351).

PLAINTIFF: "Once." (Tr. 351).

ALJ: "And Dr. Curcioni [sic] is the knee specialist?" (Tr. 351).

PLAINTIFF: "Yes . . ." (Tr. 351).

27

The Plaintiff at that time then begins speaking about some alleged eye problems she was claiming impaired her vision.  In his office notes, Dr. Curcione stated "[l]evel]- 3 new patient physical examination was performed today.  Pertinent findings are as follows: Examination of the lower extremity, please refer to the knee sheet. NV distally intact." (Tr. 303).  The knee sheet was not attached in the record. (Tr. 303).

As noted above, the ALJ only bears the burden of developing the record for one year prior to the date the Plaintiff filed her application for disability.   Plaintiff filed her application on April 16, 2002, therefore, the ALJ's burden of developing the record extended back to April 16, 2001. The Plaintiff visited Dr. Curcione on February 3, 2004.  Therefore, it was the Plaintiff's burden to produce information supporting her disability claim from Dr. Curcione's records and not error on the part of the ALJ.   In his decision, the ALJ noted Dr. Curcione reported no examination findings or restrictions. (Tr. 22, 25).   However, the ALJ did consider Dr. Curcione's diagnosis from his examination notes writing that Dr. Curcione's "diagnosis consisted of advanced arthrosis of the medial compartment of bilateral knees." (Tr. 22).

The subject office notes pertained to Dr. Curcione initial and only examination of the Plaintiff without any diagnostic or medical tests supporting a diagnosis.  Any medical findings in the evidence must be supported by medically acceptable clinical and laboratory diagnostic techniques. 20 C.F.R. § 404.1526(a).  Dr. Curcione did order an MRI, which was performed on February 18, 2004, and the results of the MRI were part of the record reviewed by the ALJ. (Tr. 22, 304-305).   Therefore, the medical diagnostic results were considered by the ALJ in his decision. (Tr. 22).   The ALJ also noted the Plaintiff reported to Dr. Curcione, in February 2004, that her knee pain was just beginning to interfere her activities. (Tr. 24).  Furthermore, the ALJ throughly reviewed the entire medical

28

record and found the Plaintiff not disabled.  Any contradictory information contained in the knee sheet would have been harmless error and further it would have been unsupported by Dr. Curcione's own MRI test results.

If the knee sheet had pertinent information relating to the Plaintiff's disability, the Plaintiff should have presented the information to the ALJ at the hearing when he inquired about Dr. Curcione's RFC evaluation.  The Plaintiff had ample time to request the ALJ to leave the hearing open until he could complete the record and had extra time to file any new materials with the Appeals Counsel.  Therefore, the Court respectfully recommends the ALJ did not err in his review of Dr. Curcione's  report.

Accordingly it is hereby

**RESPECTFULLY RECOMMENDED:**

The Decision of the Commissioner should be **AFFIRMED.**

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

**DONE AND ORDERED** at Fort Myers, Florida, this <u>14th</u> day of May, 2007.

SHERI POLSTER CHAPPELL
UNITED STATES MAGISTRATE JUDGE

Copies:  Counsel of record, MJCD